**GRAYLAW GROUP, INC.**
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834
MICHAEL E. ADLER        SBN 236115
meadler@graylawinc.com

**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
HARMEET K. DHILLON      SBN: 207873
harmeet@dhillonlaw.com
NITOJ P. SINGH       SBN: 265005
nsingh@dhillonlaw.com

**GERAGOS & GERAGOS**
**A PROFESSIONAL CORPORATION**
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
MARK J. GERAGOS         SBN 108325
mark@geragos.com
BEN J. MEISELAS     SBN 277412
ben@geragos.com
MATTHEW M. HOESLY       SBN 289593
mhoesly@geragos.com

*Attorneys for Plaintiffs and the Proposed Class*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROFITWISE ACCOUNTING INC, a California corporation, individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br>             vs.<br><br>BANK OF AMERICA, N.A.; FIRST HOME BANK; FROST BANK; JPMORGAN CHASE BANK, N.A.; PACIFIC ENTERPRISE BANK; READYCAP LENDING, LLC; U.S. | Case No. **'20 CV 1395 MMA WVG**<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES** |

1

BANK NATIONAL ASSOCIATION; and
WELLS FARGO BANK, N.A.,

                           Defendants.

Plaintiff Profitwise Accounting Inc ("Profitwise" or "Plaintiff") brings this class action complaint on behalf of itself and those similarly situated against defendants Bank of America, N.A.; First Home Bank; Frost Bank; JPMorgan Chase Bank, N.A.; Pacific Enterprise Bank; Readycap Lending, LLC; U.S. Bank National Association; and Wells Fargo Bank, N.A. (hereinafter "Defendants"), to obtain fees owed to Plaintiff as a result of its work as an agent to assist small business borrowers (the "Applicants") in getting federally guaranteed loans through the Paycheck Protection Program ("PPP"), a federal program implemented to provide small businesses with loans to combat the economic impact of COVID-19. Federal regulations require Defendants to pay Plaintiff and the proposed Class for their work as agents who facilitated loans between Defendants and small businesses. Despite precise regulatory requirements stating that agent fees are owed to Plaintiff, Defendants have failed to pay Plaintiff and the Class Members. Instead, Defendants have kept the agent fees for themselves. Plaintiff alleges the following based upon its knowledge and upon information and belief, including investigations conducted by its attorneys.

//

## I.  PARTIES

1.       Plaintiff Profitwise Accounting Inc ("Profitwise") is a corporation organized and authorized to do business, and doing business, in the State of California since December 2004. David Heistein, CPA is the owner of Profitwise and is a licensed CPA in good standing since 2007. Profitwise is located in San Diego, California, and provides personalized tax and accounting guidance to local businesses. Although Plaintiff assisted its clients with preparing their application(s) for a PPP loan from the Defendants, Defendants have failed to pay Plaintiff the agent fees Defendants owe Plaintiff for Plaintiff's work in securing the PPP loans.

2.       Defendant Bank of America, N.A. is a national bank. Its principal place of

business is in Charlotte, North Carolina. Bank of America, N.A. conducts substantial business in this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for three Applicants of Bank of America, N.A. in an amount of approximately $50,000. Although Applicants' PPP loans were funded by Bank of America, N.A., based on information and belief, Bank of America, N.A. has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

3.      Defendant First Home Bank is a Florida chartered bank. Its principal place of business is in St. Petersburg, Florida. First Home Bank conducts substantial business in this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for one Applicant of First Home Bank in an amount of approximately $15,000. Although Applicant's PPP loan was funded by First Home Bank, based on information and belief, First Home Bank has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

4.      Defendant Frost Bank is a Texas chartered bank. Its principal place of business is in San Antonio, Texas. Frost Bank conducts substantial business in this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for one Applicant of Frost Bank in an amount of approximately $25,000. Although Applicant's PPP loan was funded by Frost Bank, based on information and belief, Frost Bank has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

5.      Defendant JPMorgan Chase Bank, N.A. is a national bank. Its principal place of business is in New York, New York. JPMorgan Chase Bank, N.A. conducts substantial business in this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for nine Applicants of JPMorgan Chase Bank, N.A. in an amount of approximately $220,000. Although Applicants' PPP loans were funded by JPMorgan Chase Bank, N.A., based on information and belief, JPMorgan Chase Bank, N.A. has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

6.      Defendant Pacific Enterprise Bank is a California chartered bank. Its principal place of business is in Irvine, California. Pacific Enterprise Bank conducts substantial business in this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for one Applicant of Pacific Enterprise Bank in an amount of approximately $120,000. Although Applicant's PPP loan was funded by Pacific Enterprise Bank, based on information and belief, Pacific Enterprise Bank has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

7.      Defendant Readycap Lending, LLC is an approved non-bank, U.S. Small Business Administration Preferred Lender. Its principal place of business is in New York, New York. Readycap Lending, LLC conducts substantial business in this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for one Applicant of Readycap Lending, LLC in an amount of approximately $10,000. Although Applicant's PPP loan was funded by Readycap Lending, LLC, based on information and belief, Readycap Lending, LLC has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

8.      Defendant U.S. Bank National Association is a national bank. Its principal place of business is in Cincinnati, Ohio. U.S. Bank National Association conducts substantial business in this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for one Applicant of U.S. Bank National Association in an amount of approximately $10,000. Although Applicant's PPP loans were funded by U.S. Bank National Association, based on information and belief, U.S. Bank National Association has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

9.      Defendant Wells Fargo Bank, N.A. is a national bank. Its principal place of business is in Sioux Falls, South Dakota. Wells Fargo Bank, N.A. conducts substantial business in this District. Plaintiff acted in the statutorily defined role of an agent in securing PPP loans for two Applicants of Wells Fargo Bank, N.A. in an amount of approximately $30,000. Although Applicants' PPP loans were funded by Wells Fargo Bank, N.A., based on information and belief,

Wells Fargo Bank, N.A. has taken custody of the money owed to Plaintiff from the Federal Government, yet failed to pay Plaintiff the statutorily required agent fees that Plaintiff is owed.

//

## II. **JURISDICTION AND VENUE**

10.     The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

11.     This Court also has original jurisdiction over this action under 28 U.S.C. §1331 because the action arises under the laws of the United States, including the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136), and the SBA Regulations (as defined below).

12.     This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in this District.

13.     The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's principal place of business is located in this District, and a substantial part of the events or omissions giving rise to the alleged claims occurred in this District. Plaintiff, on behalf of its clients, applied for the PPP loans while in this District and Defendants, marketed, promoted, and took applications for the PPP loans in this District.

//

## III. **FACTUAL ALLEGATIONS**

### *Background*

14.     On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus, known as COVID-19.

15.     On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

16.     On March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19.

17.     On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

18.     On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

19.     The Trump Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

20.     On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and the Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

21.     As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the Paycheck Protection Program or PPP, temporarily adding a new product to the SBA's 7(a) Loan Program ("SBA 7(a) Program").

22.      The PPP provided small businesses with loans to be originated from February 15, 2020, through June 30, 2020. The PPP was created to provide American small businesses

with eight-weeks[1] of cash-flow assistance and to allow a certain percentage of the loan to be forgiven if the loan is utilized to retain employees and fund payrolls. Although the loans are administered by the Treasury and backed by the Federal Government, the loans are funded by private lenders ("Lenders"), including banks and financial services firms, that review and approve PPP loan applications.

23. The Treasury announced on April 3, 2020, that small businesses and sole proprietors could fill out an application (the "Application") to apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[2]

24. On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

25. On June 5, 2020, President Trump signed the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act") (Pub. L. 116-142), which changes key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans. **The Flexibility Act did not change Defendants' statutory duty to pay Plaintiff the Agent Fees Plaintiff is owed**.

26. The Treasury's Paycheck Protect Program (PPP) Information Sheet for Lenders[3] (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), describes a system to distribute the PPP loans that relies on established SBA Lenders – who approve and fund loan applicants – and the **addition** of independent agents ("PPP Agents") – who provide small businesses with the necessary assistance enabling them to apply for a PPP loan.

27. Under the SBA Regulations, a PPP Agent "can be:

---

[1] On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142), extended the eight-week period to twenty-four weeks.
[2] *Paycheck Protection Program (PPP) Information Sheet: Borrowers*, Dep't of Treasury (last visited, June 18, 2020), *https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf*
[3] *Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited, June 18, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf?

- An attorney;

- An accountant;

- A consultant;

- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

- A loan broker; or,

- Any other individual or entity representing an applicant by conducting business with the SBA."[4]

28. Unlike the existing SBA 7(a) Program, the SBA Regulations expressly contemplate and encourage PPP Agents to assist small businesses with their Applications. The SBA Regulations allow for and set standards by which PPP Agents are to be paid for their work. **Specifically, the regulations require that PPP Agents be paid from a portion of the set fees provided to SBA Lenders for processing the PPP Loan.**

29. Before the passage of the CARES Act, **lenders were not compensated** by the SBA for originating SBA 7(a) Loans. Under the newly enacted SBA Regulations for PPP loans, Lenders are **generously compensated** for processing PPP loans ("Lender Fees") based on the amount of the funded PPP loan. The SBA pays Lender Fees to Lenders who process PPP loans in the following amounts:

- Five percent (5%) for loans of not more than $350,000;

- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

- One percent (1%) for loans of at least $2,000,000.[5]

30. The CARES Act states, "**Agent fees will be paid by the lender out of the fees the lender receives from SBA.** Agents may not collect fees from the **borrower or be paid out**

---

[4] *Id.*
[5] *85 FR 20816 (3)(d).*

8

**of the PPP loan proceeds**. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan … may not exceed:

- One (1) percent for loans of not more than $350,000;

- 0.50 percent for loans of more than $350,000 and less than $2 million; and

- 0.25 percent for loans of at least $2 million."[6] (the "Agent Fees").

31.     Before the passage of the CARES Act, lenders and agents were **not** compensated by the SBA for originating SBA 7(a) Loans. That is why the CARES Act authorized the Treasury to establish limits on Agent Fees. The Treasury, "in consultation with the Secretary, **determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans**."[7]

32.     In other words, when implementing the CARES Act, the Treasury determined that the best and quickest way to get the PPP loans to the small businesses was to establish **new** regulations where Lenders and PPP Agents work together to quickly and efficiently process Applications. To incentivize this relationship, the Lender and Agent were to split the Federal Government fees approximately 80% to be retained by the Lender and 20% to be forwarded to the Agent.

33.     By assisting businesses in preparing their Applications for PPP funding, PPP Agents play a critical role in fulfilling the goals of the CARES Act and ensuring adherence to the United States Congress's legislative intent. Indeed, the Senate directed the Treasury to "**issue guidance to** <u>**lenders and agents**</u> **to ensure that the processing and disbursement of covered loans** *prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years.*"[8]

34.     If not for the PPP Agents, tens of thousands of small businesses would have had difficulty or been unable to apply for PPP loans.

---

[6] *85 FR 20816 (4)(c).*
[7] *Id. (Emphasis Added).*
[8] *CARES ACT, PL 116-136, March 27, 2020, 134 Stat 281. (Emphasis Added.)*

35.     **Nowhere in the CARES Act or the SBA Regulations does the Federal Government state, or even suggest, that Lender's approval is required in order for an Applicant to use an Agent.**

36.     Here, the Defendants are SBA approved Lenders. Plaintiff served as the PPP Agent for small businesses applying for the PPP loans provided by the Defendants and backed by the full faith and credit of the Federal Government.

37.     Despite Plaintiff's important (and successful) work in assisting the Applicants with their Applications, Defendants have not paid Plaintiff the regulatorily required Agent Fees, but have instead retained the Agent Fee portion of the Lender Fees for itself.

38.     Plaintiff has no other means of obtaining payment for the PPP Agent services it provided to its clients in securing their PPP loans. The SBA Regulations specifically prohibit PPP Agents from obtaining payment of any fees from the Applicants (i.e., Plaintiff's clients). The SBA Regulations require Plaintiff to be paid *only* by the Lender (i.e., Defendants) through the payment of a portion of the Lender Fees.

39.     Upon information and belief, apart from Plaintiff's clients, Defendants funded PPP loans for other businesses and failed to pay the statutorily required Agent Fees to members of the proposed Class that served as PPP Agents for other Applicants whose PPP loans were also funded by the Defendant.

40.     Adding validity to the need to file this action, on May 27, 2020, United Community Banks, Inc. ("UCB"), received a civil investigative demand ("CID") from the U.S. Department of Justice (the "DOJ") pursuant to the False Claims Act. The CID directed UCB and its affiliated entities "to produce certain documents and respond to written interrogatories relating to the PPP loans approved by the Bank, the **Bank's non-payment of fees to agents of borrowers** and the Bank's policies related to payment or non-payment of agent fees."[9]

/ /

---

[9] *United Community Banks, Inc., Form 8-K* (last visited June 18, 2020), https://ir.ucbi.com/static-files/c7f8eaa8-d6bf-48e8-8ebc-a60c0bf3adea. UCB is a named defendant in another lawsuit based on the same allegations in the Northern District of Georgia, 1:20-cv-02026-LMM.

*Plaintiff Assisted its Clients with Applying*

*for PPP Loans Under the CARES Act*

41.     To assist its clients with preparing Applications for a PPP loan through Defendants, Plaintiff spent considerable time familiarizing itself with the CARES Act and the related SBA Regulations. In particular, relevant provisions include Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

42.     Complying with the SBA Regulations, Plaintiff assisted Applicants in the PPP Application process. As contemplated by the Federal Government, such assistance contributed to the successful funding of the Applicants' PPP loans with a Defendant.

43.     Based on the SBA Regulations, Plaintiff understood that it was not allowed to charge its clients any fee relating to the Application process and that it was only permitted to receive compensation from the PPP Agents' share of the Lender Fees the Federal Government entrusted to the Lenders for the PPP Agents benefit.

44.     Plaintiff further understood that it was not entitled to the Agent Fees until the Lender received its Lender Fees. Based on information and belief, Defendants have received the Lender Fees for the Applicants Plaintiff assisted, thereby making the Agent Fees immediately due to Plaintiff.

45.     To participate in the PPP, "Lenders **must** comply with the applicable lender obligations set forth in this [SBA PPP Final Rule]…"[10].

46.     Therefore, Plaintiff believed in good faith that Defendants would comply with the SBA Regulations and pay Plaintiff the statutorily required Agent Fees.

47.     However, Defendants violated the SBA Final Rule because they did not pay Plaintiff the Agent Fees the Federal Government entrusted to the Defendants for the benefit of the Plaintiff. Instead, Defendants have illegally retained the Agent Fee portion of the Lender Fees.

---

[10]  *85 FR 20812 (1). (Emphasis Added).*

11

48.     A request for payment of the Agent Fees was made to Defendants Pacific Enterprise Bank and Readycap Lending, LLC (the "Contacted Defendants"). The Contacted Defendants either refused to pay or failed to respond that they would pay Agent Fees.

49.     Plaintiff has not submitted a request for Agent Fees to Defendants Bank of America, N.A., First Home Bank, Frost Bank, JPMorgan Chase Bank, N.A., U.S. Bank National Association, and Wells Fargo Bank, N.A. as they have publicly stated that they are not paying Agent Fees, and as such, a demand for payment to Defendants Bank of America, N.A., First Home Bank, Frost Bank, JPMorgan Chase Bank, N.A., U.S. Bank National Association, and Wells Fargo Bank, N.A. is futile.

50.     Defendants, as Lenders under the PPP, lack any legal authority under the SBA Regulations to withhold payment of the Agent Fees to Plaintiff.

51.     As a result of Defendants' unlawful actions, Plaintiff and the Class have suffered financial harm by being deprived of the statutorily mandated compensation for the professional services they provided in their critical role as a PPP Agent, assisting Applicants in the preparation of their PPP application. Defendants barred Plaintiff from receiving compensation for their role as PPP Agents in the PPP process, which role resulted in significant benefits to both small businesses and the Lenders.

//

## IV.  CLASS ALLEGATIONS

52.     Plaintiff brings this action on behalf of itself, and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Nationwide Class:

> All Agents who assisted a business in preparing an Application for a PPP loan pursuant to the CARES Act (the "Nationwide Class").

53.     To the extent that a Nationwide Class is not certified, in the alternative, Plaintiff brings this action on behalf of itself, and all other similarly situated Class members pursuant to

Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Statewide Class:

> All Agents who assisted a business in California in preparing an Application for a PPP loan pursuant to the CARES Act (the "Statewide Class").

The Statewide and Nationwide Class may hereafter be referred to as the "Class".

54.     For purposes of the Class definition, the term "Agent" has the same meaning as an "agent" under the SBA Regulations.

55.     Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

56.     The following are excluded from the Class and/or Subclass: (a) any Judge or Magistrate presiding over this action and members of their families; (b) the officers, directors, or employees of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

57.     *Numerosity:* The Class is composed of hundreds or thousands of Agents (the "Class Members"), whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

58.     *Commonality and Predominance:* Common questions of law and fact affect the Class.   These questions of law and fact predominate over individual questions affecting individual Class Members and, include, but are not limited to, the following:

    a.   Whether Plaintiff is an "agent" as that term is defined by the Cares Act and relevant regulations;

    b.   Whether Defendants were obligated to pay Plaintiff and the Class Agent Fees from the Lender Fees it received under the CARES Act;

    c.   Whether Defendants failed to pay Agent Fees they were required to pay;

d.   Whether Class Members are entitled to damages; and if so, in what amount;

e.   Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act;

f.   Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit; and

g.   Whether Defendants were unjustly enriched by their practice of refusing to pay Agent Fees.

59.   *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such behavior requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford or would deem it economically reasonable to seek legal redress of the wrongs complained of herein on an individual basis. Absent a class action, Class Members would not likely recover, or have the chance to recover, and Defendants would be permitted to retain the fruits of their misdeeds. Any difficulties that might occur in the management of this proposed class action are insubstantial. See Fed. R. Civ. P. 23(b)(1)(A).

60.   *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of the other Class Members. Plaintiff and the Class Members have been injured by Defendants' uniform, unfair and unlawful practice of denying PPP Agent Fees, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions are described herein.

61.   *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including class actions. Both Plaintiff and its counsel will

14

vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other Class Members.

62.     Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan application systems, and Federally-mandated record-keeping practices. Defendants have one or more databases through which all of the Applicants may be identified and ascertained, and it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the PPP Agent for the Applicant) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

/ /

## V.  CAUSES OF ACTION

### COUNT I

### DECLARATORY RELIEF

### AGAINST ALL DEFENDANTS

63.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

64.     Plaintiff assisted its clients with the PPP Loan application process, allowed Defendants to secure customers for PPP lending, and satisfied all prerequisites for obtaining PPP Agent Fees. Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations. Instead, Defendants kept the Agent Fees for themselves, in direct violation of the SBA Regulations.

65.     An actual controversy has arisen between Plaintiff and Defendants as to the Agent Fees owed to Plaintiff by Defendants. Through their conduct of refusing to pay Agent Fees and otherwise, Defendants have denied that they owe the statutorily required Agent Fees to Plaintiff and the Class.

66.     Plaintiff and the Class seek a declaration, in accordance with SBA Regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants are obligated to set aside money to pay, and to pay the Agent Fees the PPP Agents have earned for the work

performed on behalf of their clients that received a PPP loan from the Defendants.

67.     Plaintiff and the Class seek a declaration in accordance with the SBA Regulations that a portion of the Lender Fees paid to Defendants must be paid to Plaintiff and the Class.

//

## COUNT II

### UNJUST ENRICHMENT

### AGAINST ALL DEFENDANTS

68.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

69.     Plaintiff and the Class Members are PPP Agents who assisted small businesses in preparing their Application for a PPP loan from Defendants who, in turn, received a federal guarantee of repayment of the funds as well as a generous Lender Fee for each PPP loan from the U.S. Government.

70.     To participate in the PPP, "Lenders **must** comply with the applicable lender obligations set forth in this [SBA PPP Final Rule]…"[11]. Despite their efforts as PPP Agents, Defendants have failed to pay Plaintiff and the Class Members the Agent Fees in violation of the SBA PPP Final Rule.

71.     Instead, Defendants have retained the full amount of the Lender Fees from which the SBA Regulations require Agent Fees to be paid. Therefore, Defendants have unfairly retained fees intended to benefit and compensate Plaintiff and the Class for their efforts in promoting the interests of the CARES Act and ensuring small businesses receive PPP loans.

72.     By holding themselves out as PPP lenders, Defendants' conduct requested Plaintiffs, and the Class Members, to assist Applicants with their PPP Applications and have the Applications submitted to Defendants for approval.

73.     Defendants have been, and continue to be, unjustly enriched, to the detriment and at the expense of the Class Members.

---

[11]  *85 FR 20812 (1). (Emphasis Added).*

74.     Defendants have unjustly benefitted through the illegal retention of the Agent Fee portion of the Lender Fees paid by the Federal Government to the Defendants for the benefit of the Plaintiff and the Class.

75.     If Defendants' practice of retaining the full amount of Lender Fees despite the efforts of PPP Agents who, under the SBA Regulations, are entitled to a portion of the Lender Fees as Agent Fees, then the purpose and intent of the CARES Act would be upset because PPP Agents would receive no due compensation for assisting small businesses seeking a PPP Loan.

76.     Plaintiff and the Class have no other means of obtaining compensation because the **SBA Regulations prohibit PPP Agents from receiving payment from any source other than the Lender Fees and expressly prohibit collecting any fees from the Applicants**.

77.     Defendants' conduct willfully and intentionally negates the terms of the SBA Regulations by unilaterally refusing to forward to the PPP Agents the regulatorily required Agent Fees that the Federal Government entrusted to the Lenders. Defendants' actions render those terms superfluous and undermine the intent of Congress to promote small business loans under the PPP and CARES Act.

78.     Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff and the U.S. Government.

79.     Plaintiff and the Class were injured as a direct and proximate cause of Defendants' misconduct. Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, an injunction preventing Defendants from continuing their unlawful conduct, and all other relief afforded under the law that this Court deems just and proper.

/ /

**COUNT III**

**CONVERSION**

**AGAINST ALL DEFENDANTS**

80.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

81.     Under the SBA Regulations, Plaintiff and the Class, as PPP Agents, have a right to, title in, and the legal right of possession of, Agent Fees that must be paid from the amount of Lender Fees provided to Defendants for lending money pursuant to approved Applications.

82.     The SBA Regulations state that "Agent fees *will* be paid out of lender fees" and provide guidelines on the amount of Agent Fees that should be paid to the PPP Agent, depending on the size of the PPP loan secured.

83.     Additionally, the SBA Regulations require that Lenders, not Borrowers, pay the Agent Fees. The SBA Regulations unequivocally state that "Agents may not collect fees from the applicant."

84.     Plaintiff and the Class fulfilled the role of PPP Agent by assisting small businesses with their Applications. Due to Plaintiff's efforts, Defendants made federally backed PPP loans, entitling Defendants to Lender Fees from the U.S. Government. As such, Plaintiff has a right to receive, and title to, the regulatorily-mandated Agent Fees.

85.     Although Plaintiff is entitled to Agent fees under the SBA Regulations, Defendants have failed to pay the required Agent Fees, which the Federal Government paid to the Defendants as part of the Lender Fees. Defendants have no legal claim, authorization, or approval for this wrongful withholding of the Agent Fees. Therefore, Defendants have appropriated, assumed, and exercised dominion over the Plaintiff's and Class' Agent Fees.

86.     In California, money may be the subject of a conversion claim if the money can be described, identified, or segregated, and an obligation to treat it in a specific manner is established. That requirement is met because the Agent Fees are a segregated portion of the Lender Fees awarded through the SBA Regulations for a successfully funded PPP loan.

87.     At the time they unlawfully retained the Agent Fees, Defendants knew or should have known that the Agent Fees were owed to Plaintiff and the other Class Members.

88.     Defendants' improper acts or practices of refusing to pay Plaintiff and the other Class Members the mandated Agent Fees are the proximate cause of the damages sustained by the Plaintiff and the Class Members.

89.     Defendants' conduct manifests a knowing and reckless indifference toward, and

18

a disregard of, the rights of Plaintiff and the Class Members.

90.     By withholding the Agent fees, Defendants have maintained wrongful control over Plaintiff's property inconsistent with Plaintiff's entitlements under the SBA Regulations.

91.     Defendants committed civil conversion by retaining monies owed to Plaintiff and the Class.

92.     Plaintiff and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiff, as such, seeks recovery from Defendants in the amount of the owed Agent Fees, and for all other relief afforded under the law.

//

## COUNT IV

## BREACH OF AN IMPLIED CONTRACT

## AGAINST ALL DEFENDANTS

93.     Plaintiff and the Class, as PPP Agents, conferred a benefit upon Defendants by assisting Applicants with their PPP Applications that were submitted to Defendants. Based in part on Plaintiff's work, Defendants received the Lender Fee from the Federal Government, approximately 20% of which was to be forwarded to the PPP Agents (i.e., Plaintiffs and the Class) as payment for the Agent Fee.

94.     In performing work to assist Applicants in preparing Applications for a PPP loan for their small business, Plaintiff and the Class had a reasonable expectation of compensation. That reasonable expectation stemmed from the SBA Regulations, which explicitly stated PPP Agents would receive Agent Fees from the lenders. Those Agent Fees were to be paid out of a portion of the Lender Fees.

95.     Despite that reasonable expectation and the plain language of the SBA Regulations, Defendants have failed to pay Plaintiff and the Class the statutorily required Agent Fees.

96.     Instead, Defendants have retained, or stated their entitlement to retain, the Agent Fee portion of the Lender Fees for themselves and thereby, benefited from the work performed by Plaintiff and the Class.

97.     It would be unjust to allow Defendants to retain the benefit of Plaintiff's and the Class's Agent Fees in light of their reasonable expectation of payment for the services they rendered.

98.     Defendants, regardless of any intent of the parties, have a quasi-contractual obligation to pay for the services by which they benefited and to compensate Plaintiff and the Class for the reasonable value of their services.

99.     Plaintiff and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiffs, as such, seek recovery from Defendants in the amount of the owed Agent Fees, and for all other relief afforded under the law.

/ /

## COUNT V

## VIOLATION OF THE "UNFAIR" PRONG OF THE UCL

## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.

## AGAINST ALL DEFENDANTS

100.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

101.     The California Unfair Competition Law (hereinafter "UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

102.     Defendants have committed unfair acts and concealed and omitted material facts that have harmed Plaintiff and the Class.

103.     Specifically, Defendants, despite their obligations under the SBA Regulations, Defendants have failed to pay the required Agent Fees, which the Federal Government paid to the Defendants as part of the Lender Fees. Defendants' conduct constitutes an unfair act because Defendants received Lender Fees as a result of Plaintiff and the Class's efforts to assist Applicants in the Application process to secure PPP loans through Defendants, who are SBA approved lenders.

104.     By Defendants holding themselves out as PPP Lenders, Defendants necessarily held themselves out as promising to follow the mandatory PPP guidelines and regulations.

105.     Nevertheless, Defendants have failed to provide Plaintiff and the Class payment in the amount of the mandatory Agent Fees, and instead retained the Agent Fee portion of the Lender Fees for themselves.

106.     Defendants also concealed and omitted material information, specifically, that despite holding themselves out as PPP lenders under the PPP program, that Defendants would refuse, and continue to refuse despite clear regulatory guidance, to pay regulatorily-mandated Agent Fees. Had Plaintiff and the Class known that Defendants would refuse to pay Agent Fees, they would have taken their loans to other SBA Lenders who complied with the SBA Regulations.

107.     Defendants' unfair acts and omissions occurred in connection with the sale or advertisement of services, namely, services related to the processing and financing of PPP loans under the CARES Act and SBA Regulations.

108.     Defendants intended that Plaintiff and the Class rely on their omissions because, had they stated they would not pay Agent Fees as required under the SBA Regulations, Plaintiff and the Class would not have helped secure PPP loans from Defendants for their clients. By concealing and omitting their intention not to pay required Agent Fees, Defendants improperly obtained business from Plaintiff and the Class for which Defendants were compensated through the Lender Fees.

109.     Plaintiff and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiffs, as such, seek recovery from Defendants in the amount of the owed Agent Fees, and for all other relief afforded under the law.

//

**COUNT VI**

**VIOLATIONS OF THE CARES ACT**

**AGAINST ALL DEFENDANTS**

110.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully

set forth herein.

111.    The CARES Act provides a stimulus package in response to the COVID-19 pandemic and includes the PPP, which assists small businesses seeking to maintain payroll and other authorized expenses.

112.    There is an implied cause of action arising under the CARES Act.

113.    The CARES Act, along with the SBA's Regulations, provides for the payment of Agent Fess to authorized representatives who assisted PPP loan applicants with their PPP Applications (i.e., PPP Agents consisting of the Plaintiff and the Class Members).

114.    In flagrant disregard for the law, Defendants have failed and/or refused to pay the Agent Fees to the Applicants' authorized representatives (i.e., PPP Agents consisting of the Plaintiff and the Class Members), and instead, kept the fees to enrich themselves.

115.    Plaintiffs and Class Members are PP Agents under the CARES Act and the SBA Regulations and, therefore, are entitled to the Agent Fees they have earned. The Agent Fees have been paid to the Lenders by the Federal Government and are to be paid by the Lenders to the Plaintiffs and Class Members as set forth in the CARES Act and the SBA Regulations.

116.    Nevertheless, Defendants refused to pay Plaintiffs and the Class Members the authorized Agent Fees.

117.    As a direct and proximate result of Defendants' failure and/or refusal to comply with the CARES Act and the Rule, Plaintiffs and the Class Members have suffered damages in excess of $5 million.

/ /

## COUNT VII

## VIOLATIONS OF THE SBA's 7(a) LOAN PROGRAM, 15 U.S.C. § 636(a)
## AGAINST ALL DEFENDANTS

118.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

119.    The PPP was added to the SBA's 7(a) loan program, which is designed to assist

small businesses in obtaining financing.

120.    There is an implied cause of action arising under the SBA's 7(a) loan program, as applied through the CARES Act.

121.    The SBA Regulations provide for the payment of Agent Fees to authorized representatives that assisted PPP Applicants with their PPP Applications (i.e., PPP Agents consisting of the Plaintiff and the Class Members).

122.    In flagrant disregard for the law, Defendants have failed and/or refused to pay Agent Fees to Plaintiffs and the Class Members, and instead, have kept the fees to enrich themselves.

123.    As a direct and proximate result of Defendants' wrongful actions, Plaintiffs and the Class Members have suffered damages in excess of $5 million

/ /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a.  For an Order certifying the Class as defined above, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

b.  For an Order declaring Defendants' actions to be unlawful;

c.  For a declaration that all regulatorily-mandated and calculated Agent Fees are owed to Plaintiff and the Class and should be deposited into a mutually agreeable fund or funds within 60 days, to be distributed to the PPP Agents who are entitled to the funds;

d.  For all injunctive and other equitable relief available to Plaintiff and Class Members;

e.  For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and Class Members;

f.  For reasonable attorneys' fees and expenses as permitted by applicable statutes and law;

g.  For costs related to bringing this action;

23

h.    For pre- and post-judgment interest as allowed by law; and,

i.    Such further relief at law or in equity that this Court deems just and proper.

//

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class, demand a trial by jury on all issues so triable.

Dated: July 22, 2020                              Respectfully submitted,

*/s/ Nitoj P. Singh*
DHILLON LAW GROUP INC.
Harmeet K. Dhillon (CA Bar No. 207873)
Nitoj P. Singh (CA Bar No. 265005)
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

GRAYLAW GROUP, INC.
Michael E. Adler, Esq. (CA Bar 236115)
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834

GERAGOS & GERAGOS, PC
Mark J. Geragos (CA Bar No.: 108325)
Ben J. Meiselas (CA Bar No.: 277412)
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255

*Attorneys for Plaintiff and the Proposed Class*